UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. 3512 FOR 2703(d) ORDER FOR ONE PHONE NUMBER SERVICED BY GOOGLE LLC | ML No. 23-ml-1232 |

*Reference:*   DOJ Ref. # CRM-182-88303; Subject Account: +1 843-284-9422, as assigned between June 1, 2021 and November 10, 2021

### APPLICATION OF THE UNITED STATES
### FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. §§ 2703(d) and 3512(a), and the Treaty Between the Government of the United States of America and the Government of the Republic of Hungary on Mutual Legal Assistance in Criminal Matters, Hung.-U.S., Dec. 1, 1994, S. TREATY DOC. NO. 104-20 (1995) (hereinafter, the "Treaty"), supplemented by the Protocol to the Treaty Between the Government of the United States of America and the Government of the Republic of Hungary on Mutual Legal Assistance in Criminal Matters signed 1 December 1994, Hung.-U.S., Nov. 15, 2005, S. TREATY DOC. No. 109-13 (2006) (hereinafter, the "Protocol"), to execute a request from the Republic of Hungary ("Hungary").  The proposed Order would require Google LLC ("PROVIDER"), an electronic communication service and/or remote computing service provider located in Mountain View, California, to disclose certain records and other information pertaining to the PROVIDER account associated with **+1 843-284-9422, as assigned between June 1, 2021 and November 10, 2021**, as set forth in Part I of Attachment A to the proposed Order, within ten days of receipt of the Order.  The records and other information to be disclosed are described in Part II of

Attachment A to the proposed Order. In support of this application, the United States asserts:

## LEGAL BACKGROUND AND JURISDICTION

1.      PROVIDER is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require PROVIDER to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2.      Pursuant to the applicable treaty, this Court has jurisdiction to issue the proposed Order. *See* Treaty art. 5(1) (authorizing courts to issue orders necessary to execute the request). In addition, this Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. 18 U.S.C. § 2703(d). Specifically, the Court "is acting on a request for foreign assistance pursuant to [18 U.S.C.] section 3512." 18 U.S.C. § 2711(3)(A)(iii); *see also* 18 U.S.C. § 3512(a)(2)(B) (court may issue "a warrant or order for contents of stored wire or electronic communications or for records related thereto, as provided under section 2703"); 18 U.S.C. § 3512(c)(3) ("application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia").

3.      Section 3512 provides:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.

18 U.S.C. § 3512(a)(1). This application to execute Hungary's request has been duly authorized by an appropriate official of the Department of Justice, through the Criminal Division, Office of

International Affairs,[1] which has authorized execution of the request and has delegated the undersigned to file this application. The undersigned has reviewed the request and has confirmed that it was submitted by authorities in Hungary in connection with a criminal investigation and/or prosecution.

4. A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## RELEVANT FACTS

5. Authorities in Hungary are investigating an unknown suspect for fraud offenses, which occurred between June and November 2021, in violation of the criminal law of Hungary, specifically, Sections 373 and 459 of the Hungarian Criminal Code. A copy of the applicable laws is appended to this application. The United States, through the Office of International Affairs, received a request from Hungary to provide the requested records to assist in the criminal investigation and/or prosecution. Under the Treaty and the Protocol, the United States is obligated to render assistance in response to the request.

6. According to authorities in Hungary, on November 3, 2021, an individual in

---

[1] The Attorney General, through regulations and Department of Justice directives, has delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters. *See* 28 C.F.R. §§ 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

Hungary (the "Victim") filed a complaint alleging that an unknown suspect defrauded the Victim and his partner (collectively, the "Victims") of approximately HUF 2,807,526 (approximately USD 8,268).

7.  According to the Victim's complaint, between approximately June and November 2021, an unknown suspect who introduced himself as James ("James"), contacted the Victims through phone calls, text messages, and WhatsApp using phone number **+1 843-284-9422**. Using phone number **+1 843-284-9422**, James pretended to be portfolio manager of an investment firm (the "Suspect Company").  During these communications, James coaxed the Victims into investing in financial products offered on the Suspect Company's website.

8.  James urged the Victims to make a series of investments by promising high profits, claiming that the Victims could profit by twenty-five percent every four days.  Believing that the investment opportunities presented by James and the Suspect Company's website were legitimate, between June 1, 2021 and October 16, 2021, the Victims followed instructions from James' agents to create accounts on the Suspect Company's website and cryptocurrency platforms.  Then, at the urging of James and his agents, the Victims transferred approximately HUF 2,807,526 (approximately USD 8,268) to a cryptocurrency account specified by James.

9.  According to the Victims, although their accounts on the Suspect Company's website reflect growing profits, they have been unable to access or withdraw any of the funds. The Victims report that the Suspect Company's website indicates that the Victims must wait for a "private key."  According to the Victims, to date, James has continued to cite various reasons as to why the Victims cannot withdraw their profits.

10. According to Hungarian authorities, the Suspect Company is not registered with the appropriate government agencies in Hungary to offer financial services.  Additionally, based

on their inquiries into registration and insurance certificates published on the "About Us" section of the Suspect Company's website, Hungarian investigators believe that all uploaded certificates are forged documents.

11.  To date, Hungarian authorities have been unable to identify or locate James, who used the phone number **+1 843-284-9422** to defraud the Victims.  Accordingly, Hungarian authorities now seek certain records from PROVIDER for the phone number **+1 843-284-9422**, serviced by PROVIDER,  in order to identify the unknown suspect and to further their investigation.

## REQUEST FOR ORDER

12.  The facts set forth above show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.  Specifically, these items will help authorities in Hungary identify and locate the individual(s) who are responsible for the criminal activity under investigation, and to determine the nature and scope of that criminal activity.  Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of

Attachment A to the proposed Order within ten days of receipt of the Order.

                                        Respectfully submitted,

                                        VAUGHN A. ARY
                                        DIRECTOR
                                        OFFICE OF INTERNATIONAL AFFAIRS
                                        OK Bar Number 12199

By: _____

                                        Mindy Gee
                                        Trial Attorney
                                        DC Bar Number 1719348
                                        Office of International Affairs
                                        Criminal Division, Department of Justice
                                        1301 New York Avenue, N.W., Suite 300
                                        Washington, D.C.  20530
                                        (202) 598-2936 telephone
                                        (202) 514-0080 facsimile
                                        Mindy.Gee@usdoj.gov

## Relevant Provisions of the Hungarian Criminal Code

**Section 373 of Act C**
(1) "Fraud" shall mean when a person uses deceit, deception, or trickery for unlawful financial gain, and thereby causes damage.
(2) The penalty for a misdemeanor shall be imprisonment not exceeding two years if:
   a. The fraud results in minor damage; or
   b. The fraud results in damage under the petty offense limit and it is committed:
   ba. In criminal association with accomplices,
   bb. at a place of emergency,
   bc. On a commercial scale,
   bd. Under the false pretenses of soliciting donations for charitable purposes.
(3) The penalty for a felony shall be imprisonment not exceeding three years if:
   a. The fraud results in damage of considerable value; or
   b. The fraud involves a minor value and it is committed by either of the means referred to in Subparagraphs ba-bc of Subsection (2).
(4) The penalty shall be imprisonment between one to five years if:
   a. The fraud results in damage of substantial value;
   b. The fraud involves a considerable value and it is committed by either of the means referred to in Subparagraphs ba-bc of Subsection (2);
   […]

**Section 459**
(1) A crime is deemed to be committed regularly for generating income if the perpetrator is engaged in criminal activities of the same or similar character to generate profits on a regular basis . . .
   [. . .]
(6) The damage is considered larger between five hundred thousand plus one and five million forints.